UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| Stephanie Y. Brown | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:12-cv-00799-RJL |
| | ) | |
| v. | ) | |
| | ) | |
| University of the District of Columbia, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Comes Now Plaintiff, Stephanie Y. Brown, by and through the undersigned counsel,  and respectfully Replies to Defendant Sessoms' Opposition to Plaintiff's Motion for Temporary Restraining Order.   Plaintiff's arguments are stated more fully below.

ARGUMENT

At the heart of Defendant's Argument is that the President refused to forward her tenure application to the Board of Trustees based upon the "final authority" vested in him in the Merger Agreement.   See Defendant's Memorandum of Points Authorities at 9 and Defendant's Exhibit 14.  At the heart of Plaintiff's argument is that Defendant President Sessoms does not have the final authority to approve law faculty tenure applications and further, that the University has employed a double standard relative to its tenure consideration of faculty members who are considered based upon non-academic reasons, such as the comparator herein, Professor McLain. In short, in view of Plaintiff's demonstrated 25 years of service to the law school, as

memorialized by FERC in its recommendation of her tenure, she should have been treated equally in the tenure consideration process.[1]

In its insistence that the law authorizes President Sessoms to have final approval over tenure applications Defendant goes to great lengths to bolster a fiction.   It asserts in its Memorandum of Points and Authorities at p. 6 as follows:  "If, and only if, the President approves a tenure recommendation, the University President notifies the Board of Trustees ("Board") of his or her award of tenure."    This argument is in contradistinction to the Board resolutions attached to Plaintiff's Motion, which show Board action and approval of recent tenure applications.    Defendant fails to explain away these resolutions, one of which is referenced at paragraph 47 of Plaintiff's amended complaint. That resolution shows final Board approval of Professor McLain's tenure application.   As noted below, the Law School Dean circuitously refers to the Board's ultimate final approval action as "ratification" and downplays the Board's effective final authority over law school faculty tenure.

Fundamentally at issue in this case is the interpretation of a law, specifically DCMR 8, at Chapter 14. Defendant implies that this regulation was tacitly or implicitly amended in 1996 when the D.C.  government passed legislation merging DCSL with the University and amended DC Code section 38-1202.11(a).    It was not.   The language of the Merger Agreement is unambiguous:  "The provisions of Chapter 14 of the DCSL Rules *shall be amended* to provide for the Dean to forward recommendations for promotion and tenure to the President of the University, through the Provost, for final approval.   It was not amended, and the law school, if no other entity, should appreciate the absence of such an amendment on the state of applicable

---

[1] / See paragraphs 17 and 18 of Plaintiff's Amended Complaint.

law.  A perusal of Defendant's exhibits 2-8 confirms the absence of a single sentence in the cited law that gives the President final authority over law school tenure applications.

Plaintiff urges the court's attention to Defendant's Exhibit 7, which unqualifiedly confirms that the pertinent DCMR Regulation, Title 8, at 8-A 1424, was not amended to give the UDC President "final approval" authority over tenure applications.   Nor is such authority provided in 8-A1423.  Thus, to the extent that no amendment was passed into law authorizing final approval authority in the President, such power is necessarily reserved by the Merger Agreement in the UDC Board of Trustees.   Defendant Sessoms' interpretation of the Merger Agreement, absent an amendment, is strained, wishful and meritless.   Its delegation of authority argument is equally meritless.   Defendant attempts to argue that the Board delegated this power to the President, relying upon DCMTR 8-B202.6.  This provision, however, does not state a single word about delegation of authority or tenure.

Defendant further argues on a subjective whim that since DCMR 8, Chapter 14 does not give the Board authority over tenure, said authority rests with him.   This argument ignores that the Merger Agreement requires this section to be amended to achieve that specific objective, and that it was not so amended.   It also ignores the fact that the Board, despite Defendant's disingenuous representations, is and has always been the final arbiter of law school faculty tenure applications.  Defendant fails to counter this point with a single shred of documentary evidence in which President Sessoms evidences that he, as President, approved versus recommended tenure for any recent tenured law faculty.  Why?  Because said documentation simply does not exist.   Quite astonishingly, the Dean Broderick in a sworn Affidavit states that the President has considered and given the "final approval" of law faculty tenure applications, thereafter notifying the Board of Trustees of his or her approval of the tenure award.   Notably,

3

she then states, rather peculiarly, that the President thereafter seeks Board "ratification" of his supposed grant of tenure.   Final approval subject to ratification seems to be a convenient semantical play on words to support Defendant's strained theory.   Dean Broderick, in paragraph 22 of her Affidavit, states that the President's actions regarding tenure are consistent with the "final authority" vested in him by the Merger Agreement.   She too apparently overlooked the plain language of that Agreement and the absence of any codified amendments of existing law to actualize its intentions.

Defendants also argues that Plaintiff cannot satisfy the four prongs for a TRO, and rely significantly on *Zirkle v. District of Columbia*, 830 A. 2d 1250, 1256-57 (D.C. 2003).   *Zirkle* however supports Plaintiff's claim as per irreparable harm and likelihood of success on the merits. First, the claimed harm is distinguishable; it was a termination case and the harm was the loss of a job opportunity.   The claimed harm is much different here.   Plaintiff is an older law professor with 25 years of service, not healthy and suffers loss of a career. The court in *Zirkle*, in its discussion of irreparable harm, notably references *Bonds v. Heyman,* 950 F. Supp. 1202 (D.D.C.1997).   In *Bond*s, a federal court granted a preliminary injunction to prevent a federal employee from being fired pending the outcome of her discrimination suit.   The immediate case, in addition to discrimination claims, involves compelling breach of contract and other claims. Further, Plaintiff is older and not in the best of health.   Therefore, like the Plaintiff *Bonds, she* presents  "a truly extraordinary situation," *id.* at 1216.   It is unlikely in this economic climate that Brown, who worked for Defendant for 25 years and like Bond was nearing retirement age, "could ever find work approaching what she now does, if she could find work at all." *Id.* at 1215. Indeed, comparable factors are present here, and the record demonstrates that Plaintiff would experience great difficulty finding similar work.

Defendant also suggests that plaintiff is operating on a "fallacy" i.e. that the Board would have approved her tenure application.   That's not the point here at all.   Given her significant selfless years of public service to the law school, she simply urges as relief, and humbly deserves, equal Board consideration of her tenure application and the preservation of her law school teaching career.   The President's action precluded the former and terminated the latter.

*Zirkle* is equally instructive on the likelihood of Success on the merits.   At footnote 5 of the opinion, it states an instructive exception to the standard analysis given this prong of the TRO analysis:   "[W]here the action of the trial court turns on a question of law or statutory interpretation, we may reach the merits of the controversy." *Don't Tear It Down, Inc. v. District of Columbia,* 395 A.2d 388, 391 (D.C.1978) (citations omitted)."   In the immediate case, the question before the court is effectively the interpretation of DCMR and the Merger Agreement as a point of law.   Hence, the court can ascertain herein the extent to which the pertinent regulation was amended, as intended by the Merger Agreement.   Notwithstanding that case law, there remains a substantial likelihood that Plaintiff will prevail on the merits.   For example, Defendant argues that the Handbook is not a contract, but the very case that it cites contradicts its reasoning. *Paul v. Howard University*, 754 A.2d 297, at footnotes 14 and 15 are instructive.   Footnote 14 states: There appears to be no dispute that under the handbooks Dr. Paul had at least some contractual rights as an employee. *See, e. g., Washington Welfare Ass'n v. Wheeler,* 496 A.2d 613, 615 (D.C.1985).   Footnote 15 states: Paul also asserts that the "custom and practice" of the University gave her certain contractual rights. *See Bason v. American University,* 414 A.2d 522, 525 (D.C.1980).   The latter is consistent with Plaintiff's claims as amended.

Against this backdrop, Defendant's argument ignores that the Faculty Handbook, as amended, incorporates the Merger Agreement. See Defendant's Exhibit 8 at i.  Thus, its third party beneficiary and breach of merger agreement arguments are thinly iced and of no merit.   To the extent that the Board of Trustees is vested with governance of the law school, that the DCMR has not been amended, and that the custom and practice regarding the final approval of tenure applications is not vested in the University President, Plaintiff enjoys a substantial likelihood of success on the merits.   This court can clearly ascertain the absence of an amendment to the DCMR.

Was there discrimination?  Plaintiff's claim is based upon a single similarly situated white male tenure applicant and comparator, professor McLain.  In Footnote 5 of its argument, Defendant concedes that one of the criteria for tenure is the publication of three scholarly works of high quality or three scholarly equivalent works related to the practice of law…"   Plaintiff conveniently obfuscates the record in its reference to the status of her publications, referencing publications at the time of her application versus on the date upon which President Sessoms denied her tenure.   On the latter date, Plaintiff had three (3) law review articles in publication or committed to publication with several supporting letters regarding their scholarly value, including one from the former Dean of Defendant's Law School.  McLain had none.   Thus there was one set of rules for an African-American woman professor and another for a white male professor, exacerbated by the fact that Plaintiff enjoyed an equal, if not more substantial, record of service to the University.

**CONCLUSION**

Plaintiff's arguments are rooted in the record, the question as to whether the applicable DCMR has been dutifully amended and the domino effect of the absence of such an amendment. Defendant UDC failed to simply dot an "i" and cross a "t" on the minute issue of pursuing an anticipated amendment to the DCMR following execution and legislative approval in 1996 of the Merger Agreement.  It now comes before this court and seeks to place Drusilla's proverbial foot into Cinderella's shoe.  Its arguments simply do not fit and should be rejected.  Based upon the developed record, the court should grant Plaintiff's motion and probe further into this increasingly interesting factual record at a hearing on a preliminary injunction.  Therein it can corroborate the truth of the party's assertions to the extent that the court deems it necessary to look beyond the plain language and meaning of the pertinent unamended DCMR.

Respectfully submitted,

_____/s/_____
Donald M. Temple, Esq., #408749
1229 15th Street, N.W.
Washington, DC 20005
(202) 628-1101
(202) 628-1149 (fx)

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May 2012, a copy of the foregoing Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motions for Temporary Restraining Order and Preliminary Injunction were  served electronically via CaseFile Express to:

      Yoora Pak
      Wilson, Elser, Moskowitz, Edelman & Dicker
      Counsel for Defendant


      _____/s/_____
      Donald M. Temple, Esq.