UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHANIE Y. BROWN,   )<br>   )<br>Plaintiff,   )<br>   )<br>v.   )<br>   )<br>DISTRICT OF COLUMBIA *et al.*,   )<br>   )<br>Defendants.   ) | Civil Case No. 12-799 (RJL) |

MEMORANDUM OPINION
(August 27, 2012) [#2]

Plaintiff Stephanie Yvonne Brown ("plaintiff" or "Brown") seeks a preliminary injunction[1] against the University of the District of Columbia David A. Clarke School of Law ("DCSL"), as well as the University of the District of Columbia's ("UDC") Board of Trustees and President Allen L. Sessoms ("President Sessoms") (collectively, "defendants"), enjoining defendants from terminating her employment and from precluding the Board of Trustees' consideration of plaintiff's application for tenure and promotion. After consideration of both parties' pleadings and their oral arguments before the Court, plaintiff's motion for a preliminary injunction is DENIED.

---

[1] Plaintiff originally sought a Temporary Restraining Order ("TRO"), and this Court held a hearing on the TRO request on May 22, 2012, at which point plaintiff's counsel stated that plaintiff was no longer seeking a TRO, but a Preliminary Injunction. *See* Civ. Case No. 12-799, Minute Entry, May 22, 2012.

1

## BACKGROUND

Over the past twenty-five years, plaintiff has held a variety of administrative and academic positions at UDC, the most recent of which was an associate professorship of law at DCSL. Am. Compl. ¶ 1, ECF No. 6. On January 5, 2009, plaintiff applied for tenure and promotion to a full professorship position at the law school. Id. ¶ 14.

DCSL's Faculty Evaluation and Retention Committee ("FERC") met on May 14, 2009 to discuss plaintiff's application. Id. Voting in favor of recommending tenure, FERC subsequently forwarded its approval to Katherine S. Broderick, Dean of DCSL, a few days later. Id. Dean Broderick was reluctant, at first, to endorse FERC's tenure recommendation due to plaintiff's lack of scholarship, and even suggested that FERC withdraw plaintiff's tenure application from consideration. Id. ¶¶ 17, 20. When FERC updated the application to include a newly-announced publication of one of plaintiff's articles, however, Dean Broderick changed her mind, endorsed FERC's tenure commendation, and transmitted it to then Interim Provost and Vice President for Academic Affairs Graeme Baxter ("Provost Baxter") on December 8, 2009. Id. ¶¶ 22-24.

Eighteen months later, on June 6, 2011, Provost Baxter informed plaintiff, in writing, that her tenure application had been rejected, and that the 2011-2012 academic year would be her last as a member of DCSL's law faculty. Id. ¶ 27; Def. Sessom's Opp'n to Pl.'s Mot. for TRO and Mot. for Prelim. Injunct. ("Def.'s Opp'n"), Ex. 12, ECF

No. 4. Although Provost Baxter later informed plaintiff, in writing, that she had referred the tenure matter to UDC President Allen Sessoms for his review, President Sessoms agreed with Provost Baxter's decision to deny plaintiff tenure. Am. Compl. ¶¶ 29, 30. Accordingly, in October 2011, President Sessoms ratified Provost Baxter's denial of tenure, refused to forward plaintiff's application to the Board of Trustees for its consideration, and notified plaintiff, in writing, of his decision. *Id.*; Pl.'s Mot. for Prelim. Injunct. ("Pl.'s PI Mot."), Ex. 6, ECF Nos. 1-3, 2; Def.'s Opp'n, Exs. 13, 14.

On May 2, 2012, plaintiff received a letter from Provost and Vice President for Academic Affairs Ken Bain, informing her that, consistent with Provost Baxter's June 2011 letter, plaintiff's employment at DCSL would officially conclude at the end of the 2011-2012 academic year, specifically on May 15, 2012. *Id.* ¶ 55; Pl.'s PI Mot., Ex. 7. Seven days later, on May 9, 2012, plaintiff brought an action against defendants in the D.C. Superior Court, requesting, among other things, a TRO or preliminary injunction to thwart her dismissal, as well as to enable the Board of Trustees to consider her tenure and promotion application. *See* Notice of Removal ("Removal Not."), ECF No. 1; Pl.'s Mot. for TRO ("Pl.'s TRO Mot."), ECF Nos. 1-2, 2; Pl.'s PI Mot.[2] On May 17, 2012, defendants removed the action to this federal court, *see* Removal Not. at 1, and on May

---

[2] In addition to injunctive relief, plaintiff, in her suit, also requests compensatory and economic damages, as well as attorneys' fees and costs, for defendants' alleged breach of contract, breach of the covenant of good faith and fair dealing, wrongful termination, race and gender discrimination, violation of 42 U.S.C. § 1981, negligent supervision, and negligent infliction of emotional distress. *See* Am. Compl. ¶¶ 59-96.

21, 2012, by agreement of the parties, defendant District of Columbia was voluntarily dismissed from the case, *see* Stip. of Dismissal, ECF No. 3, with prejudice.

At plaintiff's request, this Court converted plaintiff's motion for a TRO or preliminary injunction into one seeking only a preliminary injunction, and set a date to hear its oral argument for a preliminary injunction. *See* Civ. Case No. 12-799, Minute Entry, May 22, 2012. The parties briefed the motion and this Court heard argument from both sides on June 12, 2012. *See* Civ. Case No. 12-799, Minute Entry, June 12, 2012. Because the plaintiff has failed to establish the requisite likelihood of irreparable harm to warrant a preliminary injunction, however, her motion must be DENIED.

## DISCUSSION

### 1. Legal Standard

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The movant, of course, carries the burden of persuasion. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). In deciding whether to grant a preliminary injunction, a court must weigh: (1) whether "the plaintiff has a substantial likelihood of success on the merits"; (2) whether "the plaintiff would suffer irreparable injury were an injunction not granted"; (3) whether "an injunction would substantially injure other interested parties"; and (4) whether "the grant of an injunction would further the public interest." *Ark. Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric.*,

573 F.3d 815, 821 (D.C. Cir. 2009).

Although "these factors interrelate on a sliding scale . . . the movant must, at a minimum, demonstrate that irreparable injury is *likely* in the absence of an injunction." *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 334-35 (D.D.C. 2009) (internal quotation marks and citations omitted) (emphasis in original). A mere possibility of irreparable harm is not enough, *see Winter*, 555 U.S. at 22, and a court may deny a motion for preliminary relief without considering any other factors when irreparable harm is not established. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("[a] movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief"); *see also CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("[b]ecause CityFed has made no showing of irreparable injury here, that alone is sufficient for us to conclude that the district court did not abuse its discretion by rejecting CityFed's request [for a preliminary injunction]"); *Cornish v. Dudas*, 540 F. Supp. 2d 61, 64 (D.D.C. 2008)("[w]here a party has made no showing of irreparable injury, injunctive relief may be unavailable regardless of the showings on the other factors").

**2. Irreparable Harm**

Plaintiff contends that, if the Court does not grant the injunction she seeks, she will suffer irreparable harm, including significant harm to her professional reputation, an

effective end to her law teaching career, a difficult transition period due to her age and health, and a loss of income. *See* Pl.'s TRO Mot. at 12-14; Pl.'s PI Mot., Ex. 9. Defendants counter that plaintiff's speculative and conclusory allegations of irreparable harm not only lack factual support, but are economic in nature and thus insufficient to merit injunctive relief. *See* Def.'s Opp'n at 15-19.

In our circuit, the standard for establishing irreparable harm sufficient to warrant a preliminary injunction is quite high. *Chaplaincy*, 454 F.3d at 297. For instance, not only must the impending harm "be both certain and great," but it "must [also] be actual and not theoretical." *Id.* (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). The plaintiff, in this case, thus must show that her injury is of such "imminence" that there is a "clear and present" need for equitable relief to prevent irreparable harm. *Id.* (citations omitted); *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) (injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time in the future").

In addition, it is well-settled that "recoverable economic losses are not considered irreparable." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995); *see also Wis. Gas Co.*, 758 F.2d at 674 ("economic loss does not, in and of itself, constitute irreparable harm"). Indeed, our circuit has explicitly stated that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough," and that the availability of sufficient compensation or

other remedial relief in the normal course of litigation "weighs heavily against a claim of irreparable harm." *Wis. Gas Co.*, 758 F.2d at 674 (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Last, ingrained in each of these principles is the added requirement that "the movant substantiate the claim that irreparable injury is likely to occur." *Id.* (internal quotation marks and citation omitted). Because the court is charged with deciding "whether the harm will *in fact* occur" when contemplating injunctive relief, "[b]are allegations of what is likely to occur are of no value." *Id.* (emphasis in original); *see also Int'l Internships Programs v. Napolitano*, 798 F. Supp. 2d 92, 100 (D.D.C. 2011) (plaintiff failed to support its claim of economic injury by not offering a single piece of evidence, "not a bill, financial statement, past budget, current budget, or financial projection," to support its alleged harm). Rather, the movant, "must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Wis. Gas Co.*, 758 F.2d at 674.

Here, plaintiff has utterly failed to meet her burden to show that she will suffer immediate and irreparable harm if the injunctive relief she requests is denied. First, plaintiff fails to demonstrate that her injury is "certain to occur in the near future," and that this harm could not be prevented absent injunctive relief. *See Int'l Internships Programs*, 798 F. Supp. 2d at 100 (citation omitted). In June 2011, plaintiff was informed, in writing, that Provost Baxter had denied her tenure application, and thus her

employment at DCSL would culminate at the end of the 2011-2012 academic year.  Am. Compl. ¶ 27; Def.'s Opp'n, Ex. 12.  Yet plaintiff waited *eleven months*, until May 2012, to file for injunctive relief (rendering this a true eleventh hour request).  Even assuming, *arguendo*, that plaintiff did not consider Provost Baxter's June 2011 decision to be definitive, and waited for a final decision from President Sessoms on her tenure application before contemplating her next steps, plaintiff still waited *almost seven months*, from October 2011 to May 2012, to file this lawsuit against the defendants, along with the instant motion seeking to enjoin defendants from terminating her employment. *See* Am. Compl. ¶¶ 29, 30; Pl.'s PI Mot., Ex. 6; Def.'s Opp'n, Exs. 13, 14.

Unfortunately for the plaintiff, this delayed timeline establishes that she had plenty of notice that her DCSL employment would end, an alleged harm that she now asks this Court to halt via the extraordinary remedy of a preliminary injunction.  Indeed, plaintiff allowed a full six months to pass without any attempt to challenge the tenure denial or to take advantage of legal remedies to reinstate her professorship, a fact that directly undercuts any argument that her injury is of such imminence that there is a "clear and present need for equitable relief to prevent irreparable harm." *See Fed. Maritime Comm'n v. City of Los Angeles*, 607 F. Supp. 2d 192, 202 (D.D.C. 2009).

Moreover, plaintiff fails to offer a single piece of evidence to substantiate her claim that irreparable injury is likely to occur beyond hypothetical, conclusory allegations with no factual support.  For instance, instead of introducing evidence into the record

that would allow this Court to determine whether plaintiff faces irreparable harm to her professional reputation or teaching career if an injunction is not issued, plaintiff offers speculative, unsubstantiated contentions such as that defendants' denial of tenure "has and will continue to tarnish [her] professional reputation," that "most other law schools would view denial of tenure as a negative statement regarding [her] qualifications" and that "[her] age and ongoing health concerns further increase the difficulty of transitioning to a new academic environment . . . ."[3]  Plaintiff does not offer any evidence, however, that demonstrates, for example, that other law schools have refused or would refuse to hire her due to defendants' denial of tenure, or that describes what health issues plaintiff suffers from and how they have or will impede plaintiff's ability to transition to a different educational setting if terminated.  As such, plaintiff does not demonstrate the likelihood of irreparable injury.[4]

---

[3] See Pl.'s PI Mot., Ex. 9; see also Pl.'s TRO Mot. at 12 ("[d]efendants' actions, which interrupt a longstanding career of public service to the law school, will interrupt if not end [p]laintiff's law teaching career and significantly harm her professional reputation"); Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for TRO and Mot. for Prelim. Injunct. ("Pl.'s Reply") at 4, ECF No. 5 ("[p]laintiff is an older law professor with 25 years of service, not healthy and suffers loss of a career"); id. ("[p]laintiff is older and not in the best of health . . . . [i]t is unlikely in this economic climate that [plaintiff] . . . could ever find work approaching what she now does, if she could find work at all") (internal quotation marks and citation omitted); id. ("the record demonstrates that [p]laintiff would experience great difficulty finding similar work").

[4] See Winter, 555 U.S. at 21-22 (rejecting a standard that would require a plaintiff to demonstrate only a "possibility" of irreparable injury); see also Int'l Internships Programs, 798 F. Supp. 2d at 100 ("plaintiff's bald assertions . . . simply do not suffice to prove irreparable injury"); Miniter v. Moon, 684 F. Supp. 2d 13, 16 (D.D.C. 2010) (denying injunctive relief where plaintiff failed to provide the court with any supporting

Because plaintiff fails to present any evidence that, absent injunctive relief, her professional reputation or ability to obtain future employment will be irreparably harmed beyond notional assertions that they will, the only other contentions of irreparable harm made by the plaintiff "are merely financial, and thus, not irreparable." *Fanning v. High Mountain Inspection Servs., Inc.*, 520 F. Supp. 2d 55, 59 (D.D.C. 2007). Specifically, plaintiff argues that she will suffer a loss of income if her employment at DCSL is terminated. *See* Pl.'s PI Mot. at 12-14; Pl.'s TRO Mot., Ex. 9. But in the absence of special circumstances, which plaintiff does not assert, "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Indeed, should plaintiff ultimately prevail, her economic losses can be remedied with money damages. *See Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999); *Wis. Gas Co.*, 758 F.2d at 674; *Gray v. Dist. of Columbia*, 477 F. Supp. 2d 70, 75 (D.D.C. 2007). Accordingly, because plaintiff's injuries are economic in nature, they do not constitute the sort of irreparable harm that justifies preliminary injunctive relief. *See, e.g., Davis v. PBGC*, 571 F.3d 1288, 1295 (D.C. Cir. 2009); *Smoking Everywhere, Inc. v. U.S. FDA*, 680 F. Supp. 2d 62, 76 (D.D.C. 2010); *TD Int'l, LLC v. Fleischmann*, 639 F. Supp. 2d 46, 48-49 (D.D.C. 2009). Plaintiff's preliminary injunction thus must be denied on this basis as well.

---

evidence to substantiate his claims of irreparable harm); *Deen-Mitchell v. Lappin*, No. 09-2069, 2010 WL 3831388, at *1 (D.D.C. Sept. 27, 2010) (holding that, because plaintiff "supports the motion with nothing more than speculation and hyperbole,"

In sum, the burden of persuasion lies directly on the plaintiff's shoulders, and she has failed to carry that burden. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Having failed to demonstrate the necessary irreparable harm, the court need not reach the other factors needed to warrant injunctive relief. *CityFed Fin. Corp.*, 58 F.3d at 747.

## CONCLUSION

Thus, for all of the above reasons, the Court DENIES plaintiff's Motion for Preliminary Injunction. An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

---

plaintiff had not shown his entitlement to a preliminary injunction).