## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STEPHANIE Y. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No. 12-799 (RJL)** |
| | ) | |
| **DISTRICT OF COLUMBIA** *et al.,* | ) | **FILED** |
| | ) | |
| **Defendants.** | ) | **JAN 2 9 2013** |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(January 28, 2013) [#9]

Plaintiff Stephanie Yvonne Brown ("plaintiff" or "Brown") brings this action
against the University of the District of Columbia David A. Clarke School of Law
("DCSL"), as well as the University of the District of Columbia's Board of Trustees (the
"Board") and President Allen L. Sessoms ("President Sessoms") (collectively,
"defendants"), seeking damages for breach of contract, breach of the covenant of good
faith and fair dealing, wrongful termination, race and gender discrimination, negligent
supervision and negligent infliction of emotional distress.   Before the Court is
defendants' Motion to Dismiss the complaint pursuant to Federal Rule of Civil Procedure
12(b)(6).   Upon consideration of the parties' pleadings, relevant law, and the entire
record therein, the defendants' Motion to Dismiss is GRANTED.

1

## BACKGROUND

Over the past twenty-five years, plaintiff has held a variety of administrative and academic positions at the University of the District of Columbia ("UDC"), the most recent of which was an associate professorship of law at DCSL.   Am. Compl. ¶ 1, ECF No. 6.   On January 5, 2009, plaintiff applied for tenure and promotion to a full professorship position at the law school.   *Id.* ¶ 14.

DCSL's Faculty Evaluation and Retention Committee ("FERC") met on May 14, 2009 to discuss plaintiff's application.   *Id.*   Voting in favor of recommending tenure, FERC subsequently forwarded its approval to Katherine S. Broderick, Dean of DCSL, a few days later.   *Id.*   Dean Broderick was reluctant, at first, to endorse FERC's tenure recommendation due to plaintiff's lack of scholarship, and even suggested that FERC withdraw plaintiff's tenure application from consideration.   *Id.* ¶¶ 17, 20.   When FERC updated the application to include a newly-announced publication of one of plaintiff's articles, however, Dean Broderick changed her mind, endorsed FERC's tenure recommendation, and transmitted it to then Interim Provost and Vice President for Academic Affairs Graeme Baxter ("Provost Baxter") on December 8, 2009.   *Id.* ¶¶ 22-24.

Eighteen months later, on June 6, 2011, Provost Baxter informed plaintiff, in writing, that her tenure application had been rejected, and that the 2011-2012 academic year would be her last as a member of DCSL's law faculty.   *Id.* ¶ 27; Defs.' Mot. to

2

Dismiss ("Defs. Mot."), Ex. 11, ECF No. 9.   Although Provost Baxter later informed

plaintiff, in writing, that she had referred the tenure matter to UDC President Allen

Sessoms for his review, President Sessoms agreed with Provost Baxter's decision to deny

plaintiff tenure.   Am. Compl. ¶¶ 29, 30.   Accordingly, in October 2011, President

Sessoms ratified Provost Baxter's denial of tenure, refused to forward plaintiff's

application to the Board for its consideration, and notified plaintiff, in writing, of his

decision.   *Id.*

On May 2, 2012, plaintiff received a letter from Provost and Vice President for

Academic Affairs Ken Bain, informing her that, consistent with Provost Baxter's June

2011 letter, plaintiff's employment at DCSL would officially conclude at the end of the

2011-2012 academic year, specifically on May 15, 2012.   *Id.* ¶ 55; Pl.'s Mot. for PI

("Pl.'s PI Mot."), Ex. 6, ECF Nos. 1-3, 2.   Seven days later, on May 9, 2012, plaintiff

brought an action against defendants in the D.C. Superior Court, requesting, among other

things, a TRO or preliminary injunction to thwart her dismissal, as well as to enable the

Board to consider her tenure and promotion application.   *See* Notice of Removal

("Removal Not."), ECF No. 1; Pl.'s Mot. for TRO ("Pl.'s TRO Mot."), ECF Nos. 1-2, 2;

Pl.'s PI Mot.   On May 17, 2012, defendants removed the action to this federal court, *see*

Removal Not. at 1, and on May 21, 2012, by agreement of the parties, defendant District

of Columbia was voluntarily dismissed from the case, *see* Stip. of Dismissal, ECF No. 3,

with prejudice.

At plaintiff's request, this Court converted plaintiff's motion for a TRO or preliminary injunction into one seeking only a preliminary injunction, and set a date to hear oral argument for a preliminary injunction. *See* Civ. Case No. 12-799, Minute Entry, May 22, 2012. After briefing was completed and oral argument was held, this Court found that plaintiff had failed to establish the requisite likelihood of irreparable harm to warrant a preliminary injunction and denied plaintiff's request for injunctive relief. *See* Civ. Case No. 12-799, Minute Entry, June 12, 2012; *Brown v. Dist. of Columbia*, No. 12-799, 2012 WL 3727177, at \*5 (D.D.C. Aug. 27, 2012).

Defendants moved to dismiss this action on June 5, 2012. *See* Defs.' Mot. For the following reasons, the defendants' motion is granted.

## LEGAL STANDARD

The defendants move to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that it fails to state a claim upon which relief can be granted. In evaluating the defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

4

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citations omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "[T]he court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Indeed, where the court cannot infer more than the mere possibility of misconduct from the facts, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks and citation omitted). However, the court may take into consideration "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ANALYSIS

Plaintiff alleges in her amended complaint that the defendants are liable for a variety of torts, contract, and civil rights violations. *See generally* Am. Compl. For the reasons stated below, the Court agrees with defendants DCSL, the Board, and President Sessoms that plaintiff's claims against President Sessoms, in his individual and official

5

capacity, should be dismissed and plaintiff's amended complaint fails to state a claim upon which relief can be granted.

## I.    Plaintiff's Claims Against President Sessoms

Plaintiff names Allen L. Sessoms, UDC President, as a defendant in this case, in both his official and individual capacities.  *See* Am. Compl. ¶ 3.  Despite a lack of clarity in the amended complaint as to which claims the plaintiff is asserting against which defendant, the Court presumes that plaintiff intends to bring claims of race and gender discrimination under the District of Columbia Human Rights Act ("DCHRA"), negligent infliction of emotional distress and a violation of 42 U.S.C. § 1981 against all defendants, including President Sessoms.  *See id.* ¶¶ 73-84, 92-94.[1]

Defendants argue that plaintiff's suit against President Sessoms in his official capacity is redundant of her suit against the Board.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 15, ECF No. 9.  An official capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978).  Because "[i]t is *not* a suit against the official personally, for the real party in interest is the entity," an official capacity suit is, "in all respects other than name, to be

---

[1] Although plaintiff's negligent supervision claim does not specify which of the defendants it is being asserted against, the facts alleged thereunder relate solely to DCSL and the Board's negligent supervision of the UDC administration, and fails to plead facts regarding any negligent supervision by President Sessoms.  *See* Am. Compl. ¶¶ 85-91.

treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted) (emphasis in original).   Accordingly, plaintiff's claims against President Sessoms in his official capacity will be treated as claims against the Board.

In addition, defendants contend that plaintiff's individual capacity claims against President Sessoms should be dismissed "because he was acting within the scope of his authority and therefore has qualified immunity."   *See* Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply") at 5-6, ECF No. 16.   Due to plaintiff's failure, in her opposition, to counter any of the defendants' assertions regarding plaintiff's individual capacity claims against President Sessoms, plaintiff concedes the defendants' arguments.[2]  Consequently, plaintiff's suit against President Sessoms in his individual capacity is also dismissed.

## II.   Plaintiff's Claims Against DCSL and the Board

### a.   Breach of Contract

Plaintiff alleges in Count 1 of her amended complaint that by allowing Provost

---

Accordingly, this Court construes plaintiff's negligent supervision claim as being asserted against DCSL and the Board, but not President Sessoms.

[2] *See Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule"); *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("[i]t is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002); Local Rules of the U.S. Dist. Court for the Dist. of Columbia, LCvR 7(b) ("If . . . a[n] [opposing] memorandum is not filed within the prescribed time, the Court may treat the motion as

Baxter and President Sessoms "to impede [p]laintiff's tenure review and promotion

process and ultimately preclude [the] Board['s] . . . consideration of [p]laintiff's tenure

application," defendants DCSL and the Board "violated the [Faculty] Handbook[]," 

thereby "breach[ing] [p]laintiff's contractual rights."   Am. Compl. ¶¶ 59-62.   In

addition, plaintiff contends that Dean Broderick failed to "advise[] the Board and

President Sessoms of the state of the law and that any final consideration by the Provost

and/or the President of [p]laintiff's tenure and promotion application was prohibited," *id.*

¶ 61, and that defendants DCSL and the Board's alleged breach caused her to "suffer[]

considerable economic harm . . . including loss [of] wages, loss [of] promotion, back and

front pay, and other benefits."  *Id.* ¶ 63.   Defendants DCSL and the Board argue that

plaintiff's claim for breach of contract should be dismissed because she fails to allege

facts establishing the necessary elements of a binding, enforceable agreement between the

parties, and because there is no breach.   *See* Defs.' Mem. at 18-24.   I agree.

To state a claim for breach of contract, plaintiff must allege: "(1) a valid contract

between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of

that duty; and (4) damages caused by breach."   *Ihebereme v. Capital One, N.A.*, 730 F.

Supp. 2d 40, 47 (D.D.C. 2010) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181,

187 (D.C. 2009)).   Under District of Columbia law, a valid and enforceable contract

exists where there is "both (1) agreement as to all material terms, and (2) intention of the

---

conceded").

parties to be bound." *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005)

(quoting *Georgetown Entm't Corp. v. Dist. of Columbia*, 496 A.2d 587, 590 (D.C. 1985))

(alteration in original).   The party claiming the existence of an enforceable contract bears

the burden of demonstrating that the parties entered into one.   *Ponder v. Chase Home*

*Fin., LLC*, 666 F. Supp. 2d 45, 48 (D.D.C. 2009).   "In the absence of a valid agreement,

a breach of contract claim cannot be sustained."   *Cambridge Holdings Grp., Inc. v. Fed.*

*Ins. Co.*, 357 F. Supp. 2d 89, 94 (D.D.C. 2004) (citation omitted); *Strauss v. NewMarket*

*Global Consulting Grp., LLC*, 5 A.3d 1027, 1033 n.3 (D.C. 2010) ("A court cannot

enforce a contract unless it can determine what it is.").   Plaintiff utterly fails to do so

here.

   While plaintiff contends that the Faculty Handbook is a "binding contract between

law faculty members and the law school" that obligates the Board—not the President—to

make the final decision with regard to tenure applications, *see* Am. Compl. ¶¶ 10-12, 36,

59-62, the amended complaint fails to allege the facts necessary to show that plaintiff and

DCSL intended to be bound by the Faculty Handbook, or that the parties mutually

assented to its specific terms.   Indeed, the Faculty Handbook clearly states that it is

"provided as a reference for all faculty members" and it is "not intended to be a substitute

for the District of Columbia Law Rules (CDCR Title 8A), nor is it intended to provide a

detailed compendium of various operating rules and procedures."   *See* Defs.' Mot., Ex. 9

at i (Preface).

Moreover, even if the Court were to find that the Faculty Handbook is a valid contract between the plaintiff and DCSL, and that the Faculty Handbook incorporates the Merger Agreement, as plaintiff alleges, *see* Am. Compl. ¶¶ 11, 60, 62, she nonetheless fails to state a claim for breach of contract because she received the very promotion and tenure review process outlined in the Faculty Handbook and the Merger Agreement. Indeed, when the Faculty Handbook's subsection on the promotion and/or tenure application process[3] is reviewed, the reason for plaintiff's bald allegations, devoid of

---

[3] The Faculty Handbook describes, in pertinent part, the procedure for promotion and tenure as follows:

(d) When a faculty member is to be considered for tenure or promotion, the Dean shall call a special meeting for that purpose.   The criteria described above shall be reviewed.
(e) Only tenured members of the faculty may vote in decision to recommend tenure.   In the case of promotion to the rank of Associate Professor, only Associate and Full Professors may vote; in the case of promotion to the rank of Professor, only Professors may vote.
(f) Members of the faculty of the required rank and tenure, whether or not on leave and whether or not in residence, are eligible to vote in person or by tendering a vote to the Chairperson of the Faculty Evaluation and Retention Committee before the meeting.   The Dean shall exercise his or her best efforts to convey the necessary information to, and to obtain votes from, faculty members away from the School.   An otherwise eligible member who declares his or her intention not to vote shall not be counted for purposes of determining the number eligible to vote.
(g) A quorum for a meeting on tenure or promotion shall consist of 75% of the faculty members eligible to vote.   A candidate shall be recommended for tenure or promotion only if he or she receives the favorable vote of 60% of those eligible to vote.
(h) All voting shall be by unsigned secret ballots.
(i) If promotion or tenure is not approved, the candidate shall be advised of the results of voting.   A candidate who is denied tenure shall be entitled to

support, is clear: the Faculty Handbook is completely silent regarding how the

promotion/tenure review process should proceed *after* the FERC's assessment and vote,

despite plaintiff's conclusory contentions to the contrary, and creates no obligation

whatsoever for the FERC to forward its recommendation to the Dean, who is then to

forward any recommendation directly to the Board.   Moreover, the Merger Agreement

clearly outlines a promotion and tenure application review process that not only requires

review by FERC, the DCSL Dean, and the Provost, but explicitly states that the President

has final approval of promotion and tenure recommendations.[4]   According to plaintiff's

amended complaint, she received this process.   *See* Am. Compl. ¶¶ 14-30.   Accordingly,

the Court finds that the breach of contract claim against defendants DCSL and the Board

should be dismissed because no set of facts alleged by the plaintiff would entitle her to

---

serve out the remainder of his or her contract term.

Defs.' Mot., Ex. 9 at 14-15.

[4] More specifically, the Merger Agreement states:

> The Faculty Evaluation and Retention Committee shall evaluate faculty
> candidates for award of tenure and make recommendations to the Dean.
> Based on the recommendation of the Faculty Evaluation and Retention
> Committee, the Dean will recommend faculty candidates for promotion and
> tenure to the Provost, who shall forward those recommendations to the
> President with his or her own recommendations.   The provisions of
> Chapter 14 of the DCSL Rules shall be amended to provide for the Dean to
> forward recommendations for promotion and tenure to the President of the
> University, through the Provost, for final approval.

Defs.' Mot, Ex. 1 at 8.

relief.

### b.     Breach of Covenant of Good Faith and Fair Dealing

In Count II, plaintiff alleges that defendants DCSL and the Board breached the

covenant of good faith and fair dealing by "intentionally imped[ing] and delay[ing]

consideration of [p]laintiff's applications for tenure and full professorship," "allow[ing] .

. . President [Sessoms] to make a final tenure decision in violation of applicable law,"

"deliberately depriv[ing] [p]laintiff of timely, objective and unbiased consideration for

tenure and promotion," and "depriv[ing] [the] Board of its right to dutifully consider

[p]laintiff's application for tenure and full professorship."   Am. Compl. ¶¶ 65-66.

Consequently, plaintiff contends that she has suffered an undetermined amount of

"economic damages."   *Id.* ¶ 67.   I disagree.

Under District of Columbia law, "all contracts contain an implied duty of good

faith and fair dealing, which means that 'neither party shall do anything which will have

the effect of destroying or injuring the right of the other party to receive the fruits of the

contract.'"   *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (citation omitted); *see*

*also Messina v. Nationwide Mutual Ins. Co.*, 998 F.2d 2, 4-5 (D.C. Cir. 1993).   A breach

of the duty of good faith and fair dealing must necessarily arise, however, out of the

performance or enforcement of a contract.   *C&E Servs., Inc. v. Ashland Inc.*, 601 F.

Supp. 2d 262, 275 (D.D.C. 2009).

Because plaintiff has failed to plead facts establishing a valid contractual

12

agreement between the parties that could give rise to a breach of good faith and fair dealing, *see supra* pages 7-12, the Court finds that the plaintiff fails to state a claim for breach of good faith and fair dealing against defendants.[5]   Count II is thus dismissed.

### c.   Wrongful Termination

Plaintiff claims in Count III of her amended complaint that defendants DCSL and the Board "illegally terminated [her] in violation of the Merger Agreement, Faculty Handbook and D.C. law," resulting in "significant emotional and mental distress and economic losses" to her.   Am. Compl. ¶¶ 68-72.

As defendants point out, however, Count III mostly regurgitates plaintiff's breach of contract claims—that she was denied tenure and ultimately terminated in violation of the Faculty Handbook, which incorporates the Merger Agreement.   *See id.* ¶¶ 59-63. Because plaintiff cannot recast her "breach" claims as a wrongful termination claim, especially where she has not shown that her breach of contract claims are distinguishable from her wrongful termination claim, the Court dismisses Count III as it relates to defendants' alleged violation of the Faculty Handbook and the Merger Agreement.[6]

---

[5] *See, e.g., Mero v. City Segway Tours of Washington DC, LLC*, 826 F. Supp. 2d 100, 107 (D.D.C. 2011) ("[T]he absence of a contract alone is sufficient to defeat the implied covenant claim."); *Cambridge Holdings*, 357 F. Supp. 2d at 96 (plaintiff cannot state a claim for breach of good faith and fair dealing where plaintiff fails to allege that defendant was a party to express or implied agreement); *Steele v. Isikoff*, 130 F. Supp. 2d 23, 33 (D.D.C. 2000) (refusing to recognize the covenant of good faith and fair dealing where no valid contract existed between the parties).

[6] *See Brown v. Children's Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 138 (D.D.C. 2011) ("Insofar as the conduct giving rise to plaintiff's negligence claims is the same conduct

With regard to plaintiff's allegation of wrongful discharge under District of
Columbia law, specifically Section 1423 of District of Columbia Municipal Regulations
("D.C. Mun. Regs.") 8-A, *see* Am. Compl. ¶¶ 13, 69, this claim also fails. "It is
well-settled District of Columbia law that an employment contract, absent evidence to the
contrary, is terminable at the will of either party." *Sorrells v. Garfinckel's, Brooks Bros.,*
*Miller & Rhoads, Inc.*, 565 A.2d 285, 289 (D.C. 1989) (internal quotation marks and
citation omitted). However, courts in the District of Columbia have created several
public policy exceptions to the rule where the employee's discharge offends some
"mandate of public policy" that is "firmly anchored in either the Constitution or in a
statute or regulation which clearly reflects the particular public policy being relied upon
and . . . [that policy] arise[s] from a statute or regulation that does not provide its own
remedy." *Carson v. Sim*, 778 F. Supp.2d 85, 97 (D.D.C. 2011) (internal quotation marks
and citations omitted). These narrow exceptions include situations "where an employee
suffers an adverse action for refusing to break the law or for following the law to the
detriment of her employer." *Chisholm v. Dist. of Columbia*, 666 F. Supp. 2d 96, 117

---

giving rise to her Title VII claims, the negligence claims appear to be duplicative . . . .
[and] the Court will dismiss the negligence claims."); *Iacangelo v. Georgetown Univ.*,
760 F. Supp. 2d 63, 66 (D.D.C. 2011) ("[T]he plaintiffs' claim for breach of fiduciary
duty is entirely duplicative of their claims for medical malpractice and lack of informed
consent; this claim rests on the same factual allegations as the other two, would be
decided under the same legal standards as one or the other of those claims, and authorizes
the same forms of relief."); *Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 66 (D.D.C. 2006)
(dismissing plaintiff's discrimination claim because it was duplicative of plaintiff's
claims under the DCHRA and federal civil rights statutes).

(D.D.C. 2009).

The plaintiff here was not anything other than an at-will employee of DCSL, and she does not allege otherwise.   And although plaintiff claims that defendants DCSL and the Board wrongfully discharged her, in violation of D.C. Mun. Regs. 8-A § 1423, which "states that tenure recommendations shall be forwarded *only* to the Dean," Am. Compl. ¶ 13, plaintiff mischaracterizes the text of the provision[7] as well as fails to identify a public policy upon which her wrongful termination claim is based.   Consequently, Count III must be dismissed in its entirety.[8]

### d.      Violation of DCHRA

In Count IV, plaintiff alleges that she was the victim of race and sex discrimination, in violation of the DCHRA, D.C. Code § 2-1401 *et seq.   See* Am. Compl. ¶¶ 73-77.   More specifically, plaintiff asserts that defendant DCSL "discriminated against [her] . . . when its President denied her tenure and a promotion to full professorship based upon a racially and gender biased double standard[]" and when the

---

[7]  Contrary to plaintiff's argument that Section 1423 of D.C. Mun. Regs. 8-A, entitled "Faculty Promotion," indicates that tenure recommendations should be forwarded *only* to the Dean, the actual text of the provision provides no support for this contention.   *See* Defs.' Mot., Ex. 8 (D.C. Mun. Regs. 8-A § 1423).

[8]  *See, e.g., Chisholm*, 666 F. Supp. 2d at 117 (wrongful discharge claim dismissed because "plaintiff does not point to any fundamental public policy expressed in the constitution or the statutes of the District of Columbia that support her position, but rather points to the general policy of the Courts' Comprehensive Policies . . . ."); *Davis v. Gables Residential/H.G. Smithy*, 525 F. Supp. 2d 87, 102 (D.D.C. 2007) ("Plaintiff's wrongful discharge is deficient [when] it does not identify any public policy purportedly violated by his termination.").

"Board sanctioned the President's actions while simultaneously approving a similarly

situated white male law professor's tenure and full professor application based upon less

stringent tenure criteria." *Id.* ¶ 75. Moreover, plaintiff contends that the Board "failed

to monitor this tenure development . . . [or] take any corrective action," thereby

"allow[ing] and encourag[ing] its President to act in violation of the law and [UDC] and

the District of Columbia's anti-discrimination laws." *Id.* ¶ 76. I disagree.

       In addressing employment discrimination claims under the DCHRA, courts are

guided by case law regarding Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

*et seq.* *See Burt v. Nat'l Republican Club of Capitol Hill*, 828 F. Supp. 2d 115, 122

(D.D.C. 2011). The DCHRA, like Title VII, prohibits certain discriminatory practices,

making it unlawful for an employer to "fail or refuse to hire, or to discharge, any

individual; or otherwise to discriminate against any individual, with respect to his

compensation, terms, conditions, or privileges of employment" based on an individual's

"race, color, religion, national origin, sex [or] age." D.C. Code § 2-1402.11(a)(1).

       Plaintiff fails to state a discrimination claim under the DCHRA because she has

not alleged facts that could give rise to an inference of discrimination on the basis of race

or gender. To establish a prima facie case for discrimination, a plaintiff must show that

(1) she is a member of a protected class, (2) she suffered an adverse employment action,

and (3) the unfavorable action gives rise to an inference of discrimination, that is, an

inference that her employer took the action because of her membership in the protected

16

class.   *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006);

*George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005); *Brown v. Brody*, 199 F.3d 446,

452 (D.C. Cir. 1999).

      Unfortunately for the plaintiff, her amended complaint fails to allege facts that

plausibly suggest the necessary connection between the adverse employment action at

issue, the denial of promotion and tenure, and her membership in a protected class, as an

African-American female.   Certainly, plaintiff pleads her own race and gender, and

alleges that, as a result of her status, she was refused promotion and tenure.   Am. Compl.

¶¶ 50-54, 73-77.   However, plaintiff alleges no set of facts, beyond threadbare and

conclusory assertions, from which a reasonable person could infer *how* her gender or race

caused her tenure rejection, as opposed to any other, non-discriminatory basis, leaving the

Court to infer that the act was discriminatory simply based on the fact that she is a

woman, or that she is African-American, or both.   This Court is not required to accept

inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in

the complaint.   *See Kowal*, 16 F.3d at 1276.   Further, this discriminatory inference is

especially weak given the fact that the two people who allegedly considered plaintiff's

tenure application unlawfully are either African-American (President Sessoms) or a

woman (Provost Baxter).   *See* Am. Compl. ¶¶ 24-25, 27, 29-30; Pl.'s Opp'n to Defs.'

Mot. to Dismiss ("Pl.'s Opp'n") at 20-21, ECF No. 13.

      In addition, plaintiff pleads that she was subject to a different set of tenure criteria

from Professor William G. McLain, a white male law professor who received tenure in 2010, in violation of the DCHRA.  *See* Am. Compl. ¶¶ 44-54, 75.  But even drawing all reasonable inferences from those allegations in her favor, plaintiff fails to provide any support for her conclusory allegation that she was "equally, if not more qualified than [Professor] McLain, based upon applicable tenure criteria" but was "subject to the typical double standard rooted in the history of race discrimination in American jurisprudence." *Id.* ¶¶ 50-51.  Indeed, plaintiff herself concedes that, like Professor McLain, she too did not have the requisite number of published law review articles for tenure, and that Professor McLain "was credited for his various . . . legal contributions in order to justify his award of tenure."  *Id.* ¶¶ 17, 20-22, 44, 49-50; Pl.'s Opp'n at 22.  It is well established in this Circuit that a court need not accept a plaintiff's legal conclusions; rather, a plaintiff must provide the grounds of his or her entitlement to relief, which requires a showing and not just a blanket assertion of a right to relief.  *See Twombly*, 550 U.S. at 555 n.3; *Kowal*, 16 F.3d at 1276.  For these reasons, the Court must dismiss Count IV for failure to state a claim of racial or sex discrimination under the DCHRA.

      **e.**     **Violation of 42 U.S.C. § 1981**

Alleging a violation of 42 U.S.C. § 1981, plaintiff claims in Count V of her amended complaint that defendants DCSL and the Board "denied [her] the same right to make and enjoy her employment contract and the benefits thereof as enjoyed by white employees, including equal and unbiased consideration of tenure and full professorship"

in violation of "the [E]qual [P]rotection [C]lause of the 14th Amendment as pronounced in 42 U.S.C. [§] 1981." Am. Compl. ¶ 79. Furthermore, plaintiff contends that Provost Baxter and President Sessoms "acted in violation of the law and . . . [DCSL's] antidiscrimination policies and procedures, thereby establishing an illegal policy and custom by its failure to enforce its anti-discrimination policies and laws." *Id.* ¶ 80.

A cause of action under Section 1981 may be brought when a plaintiff has suffered an injury flowing from the racially-motivated breach of his contractual relationship with another party. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (courts evaluating Section 1981 claims of employer discrimination must assess whether employer intentionally discriminated against plaintiff). In addressing race discrimination claims under Section 1981, courts look for guidance to the jurisprudence surrounding Title VII. *See Burt*, 828 F. Supp. 2d at 122.

The analysis under Count V, plaintiff's Section 1981 claim, is largely duplicative of the Court's undertaking on plaintiff's DCHRA claim. Essentially, the plaintiff contends that defendants violated both Section 1981 and the DCHRA by allowing the President and Provost to consider and make final decisions upon her promotion and tenure application, while also holding plaintiff's application to a different standard than a white professor due to her race. *See* Am. Compl. ¶¶ 73-84.

Accordingly, like her DCHRA claim, plaintiff's claim for discrimination under

19

Section 1981also fails to state claim upon which relief can be granted.   Aside from broad, unsupported allegations that her race played a deciding role in defendants' promotion and tenure decisions, plaintiff has pled no set of facts that could allow this Court to make the inference that plaintiff's race was a motivating factor in DCSL or the Board's decision to deny plaintiff tenure or promotion.   *See supra* pages 16-18; *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks and citation omitted).   Plaintiff's claim under Court V thus cannot stand.

### f.    Negligent Supervision

Finally, in Count VI of the amended complaint, plaintiff claims that defendants DCSL and the Board are liable for "negligent supervision" due to their failure to "properly monitor the [DCSL] tenure review process," "supervise and monitor its President and then . . . Provost to ensure that they acted in accordance with [UDC's] stated anti-discrimination [and tenure] policies and procedures," and "monitor [DCSL's] tenure practices to ensure that [those practices] complied with its [Faculty] Handbook and the Merger Agreement, subject to applicable D.C. Municipal Regulatons [sic]."   Am. Compl. ¶¶ 85-90.

Plaintiff's negligent supervision claim is thus premised on the fact that defendants DCSL and the Board were obligated to ensure that neither the President nor the Provost

rendered any faculty tenure decisions for DCSL, especially final decisions.  *See id.* ¶¶ 85-90.   Plaintiff, however, fails to point to any particularized legal duty or requisite standard of care that the defendants allegedly breached by allowing the President or Provost to make such tenure decisions.   Plaintiff has thus failed to adequately plead a claim for negligent supervision and Count VI is dismissed.[9]

**CONCLUSION**

Thus, for all of the above reasons, the Court GRANTS defendants' Motion to Dismiss.   An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[9] Plaintiff also asserts a claim for negligent infliction of emotional distress in her amended complaint.  *See* Am. Compl. ¶¶ 92-94.   Defendants contend that the amended complaint is wholly lacking in any assertion of physical injury or emotional distress plaintiff suffered as a result of defendants' denial of tenure, and therefore is fatally deficient.  *See* Defs.' Mem. at 43.   Indeed, while the plaintiff effectively concedes the defendants' arguments by failing to counter any of the defendants' assertions regarding this claim in her opposition, *see Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002), the plaintiff's failure to allege that she was ever in the zone of physical danger created by defendants, or that she suffered any physical injury, warrants dismissal of this claim as well.